WM. H. HEINEMANN CREAMERIES, INC., and another, Appellants, vs. MILWAUKEE AUTOMOBILE INSURANCE COMPANY and another, Respondents.*

*June 2—June 28, 1955.*

* Motion for rehearing denied, with $25 costs, on September 16, 1955.

For the appellants there was a brief by *Bendinger, Hayes & Kluwin,* and oral argument by *Donald J. Tikalsky,* all of Milwaukee.

For the respondents there was a brief by *McCue & Regan,* attorneys, and *John L. Schlatterer* and *Francis D. McCue* of counsel, all of Milwaukee, and oral argument by *Francis D. McCue.*

CURRIE, J.   The following three issues are presented on this appeal:

(1) Was it error for the trial court to permit the defendants to file an amended answer on the day of trial, so as to set up additional defenses based upon the prior compromise settlement and the order dismissing the circuit court action?

(2) Is the order of dismissal of the circuit court action commenced by Tronca against Heinemann, in which Tronca was plaintiff and Heinemann defendant, *res adjudicata* as to the rights of the plaintiffs to recover in the instant action?

(3) Are the plaintiffs estopped from bringing the instant action by the compromise settlement made with Tronca

whereby the Indemnity Company paid Tronca $150 and took his release?

No advance notice was given by the attorneys for the defendants to plaintiffs' counsel of the intention to ask leave of the court to file or serve the amended answer. However, counsel for plaintiffs have not indicated that by reason of surprise they were unprepared to meet the issues presented by the new defenses alleged in the answer. There was no showing made that they were prevented from subpoenaing necessary witnesses as was the case in *Puccio v. Mathewson* (1951), 260 Wis. 258, 264, 50 N. W. (2d) 390, where a new trial was granted on the ground of prejudice due to surprise as a result of granting permission during the course of trial to one of the parties to file a cross complaint raising a new issue. The trial court apparently granted time to plaintiffs' attorneys in which to prepare and file a brief on the issues of law raised by the additional defenses pleaded in the amended answer. We, therefore, hold there was no abuse of discretion in the trial court granting leave to file such amended answer.

We are satisfied that the order of dismissal of the circuit court action is not *res adjudicata* as to plaintiffs' right of recovery in the instant action. This is because it was optional with Heinemann whether or not to file a counterclaim in the original circuit court action asking for its damages. This very point was recently passed upon by this court in *Kassien v. Menako* (1955), ante, p. 309, 70 N. W. (2d) 670. The Missouri supreme court reached the opposite conclusion in *Keller v. Keklikian* (1951), 362 Mo. 919, 244 S. W. (2d) 1001, but such latter decision was grounded upon a Missouri statute under which the defendant is required to file a counterclaim under penalty that, if he fails so to do, of not being able thereafter to institute a separate action against plaintiff

grounded upon the same facts which he might have interposed by way of counterclaim.

Our holding in *Kassien v. Menako, supra,* is in accord with Restatement, Judgments, p. 230, sec. 58, which reads as follows:

"Where the defendant does not interpose a counterclaim although he is entitled to do so, he is not precluded thereby from subsequently maintaining an action against the plaintiff on the cause of action which could have been set up as a counterclaim."

Comment *b* of such section of the Restatement states (p. 231):

*"Where facts constituting defense are ground for counterclaim.* Where the same facts constitute a ground for defense to the plaintiff's claim and also a ground for a counterclaim, and the defendant fails to allege these facts either as a defense or as a counterclaim, he is not precluded from relying upon them thereafter in an action brought by him against the plaintiff. The defendant has had his day in court in so far as the plaintiff's claim against him is concerned, and his failure to interpose a defense to the plaintiff's claim precludes him from thereafter asserting the defense (see sec. 47). *His claim against the plaintiff, however, is a different cause of action from the plaintiff's claim against him, and is not merged in the judgment given in the action on the plaintiff's claim.* It is immaterial whether in the plaintiff's action against him he defaulted or interposed a defense setting up facts other than those which formed the basis of his claim against the plaintiff." (Italics supplied.)

Comment *f* of such section of the Restatement contained in the 1948 supplement, page 332, points out that in some jurisdictions a counterclaim is compulsory on the part of the defendant in that, if he fails to interpose such counterclaim, he cannot later bring a separate action against plaintiff. It is clear that the Missouri statute before the court in *Keller v. Keklikian, supra,* falls in this category. On the other hand,

sec. 263.14 (1), Stats.,[1] is not of such compulsory type. This is made clear by the following comment of the advisory committee on pleading and practice appearing in Wis. Anno. (1950), 1070:

"The new rule 263.14, governing counterclaims, is much like federal rule 13. There is some difference between these two rules: *Under 263.14 counterclaims are purely permissive. The defendant has the choice of counterclaiming or not, as to him seems best.* Under the federal rule counterclaims are divided into two classes, viz., compulsory and permissive." (Italics supplied.)

Having concluded that the order of dismissal in the circuit court action is not *res adjudicata* as to plaintiffs' cause of action in the case at bar, we now turn to the third and last issue presented on this appeal, viz., whether the compromise settlement made with Tronca, which preceded the order of dismissal of the circuit court action, constituted conduct which estops plaintiffs from prosecuting the instant action.

On this point the recent decision of the New Jersey supreme court in the case of *Kelleher v. Lozzi* (1951), 7 N. J. 17, 80 Atl. (2d) 196, is directly in point. An automobile collision had taken place between automobiles owned and driven by the plaintiff Mrs. Kelleher and the defendant Lozzi. Lozzi commenced suit against Kelleher alleging negligence. Kelleher filed an answer denying liability. Thereafter at the pretrial conference Kelleher made settlement by paying Lozzi $550 damages, the attorneys signed a stipulation for the dismissal of the action without costs, and an order was entered for such dismissal. The court in its decision stated (7 N. J. 24, 80 Atl. (2d) 199):

"By every fair expectation the question of Lozzi's negligence as between him and Kelleher was settled in the negative

---

[1] Sec. 263.14 (1) A defendant *may* counterclaim any claim which he has against a plaintiff, upon which a judgment may be had in the action. (Italics supplied.)

by the parties *inter sese*. It is difficult to understand how, on sound reasoning or equitable dealing, any other result could be reached. . . .

"It is logically and factually impossible to reconcile a valid claim by Kelleher with a valid claim by Lozzi. As Kelleher by her act acknowledged a valid claim by Lozzi and effected a settlement on that basis, we are brought to the conclusion that she estopped herself from taking the opposite position; that consequently she, in her own suit, has failed to state a claim upon which relief can be granted; . . ."

There is one difference in the fact situation presented in the instant case from that in *Kelleher v. Lozzi, supra*. This consists of the fact that the release given by Tronca contained the following recital: "It is further agreed and understood that said payment is not to be construed as an admission of any liability." We do not deem that such recital of non-liability should be held to override the inference to be drawn from the act of the plaintiff Indemnity Company in paying damages to Tronca, that the Indemnity Company had no claim against Tronca arising out of the accident. Tronca had the right to act upon such assumption in accepting the $150 damages it tendered in settlement. Therefore, it is only equitable that the rule of estoppel invoked by the New Jersey court in *Kelleher v. Lozzi, supra,* should be equally applicable here.

The decision in *Giles v. Smith* (1949), 80 Ga. App. 540, 56 S. E. (2d) 860, is also directly in point and the result therein is in accord with that reached by the New Jersey court in *Kelleher v. Lozzi, supra*. The following cases by implication recognize the correctness of such rule, but hold it not applicable under a fact situation where an insurance carrier made the compromise settlement under circumstances in which the insured did not personally participate therein. *U. S. A. C. Transport, Inc., v. Corley* (5th Cir. 1953), 202 Fed. (2d) 8; *Foremost Dairies, Inc., v. Campbell Coal Co.*

(1938), 57 Ga. App. 500, 196 S. E. 279; *Perry v. Faulkner* (1954), 98 N. H. 474, 102 Atl. (2d) 908; *De Carlucci v. Brasley* (1951), 16 N. J. Super. 48, 83 Atl. (2d) 823; *Jetton v. Polk* (1933), 17 Tenn. App. 395, 68 S. W. (2d) 127; and *Wieding v. Krisch* (Tex. Civ. App. 1954), 271 S. W. (2d) 458.

Inasmuch as it was the plaintiff Indemnity Company which paid the $150 in compromise settlement to Tronca, the Indemnity Company is estopped by such conduct from prosecuting the instant action to recover the sum of $2,214.22 which it paid as collision loss to Heinemann.

The record is silent as to whether Heinemann participated in the compromise settlement made with Tronca. If Heinemann was not consulted with respect to such settlement and did not participate therein, Heinemann's cause of action to recover the $100 not covered by its collision policy issued by the Indemnity Company would not be barred by such settlement. The fact that the attorney of record for Heinemann in the circuit court action purported to act for Heinemann in effecting the settlement and stipulating for the dismissal of the action is not conclusive on such issue. An insured, who is sued for damages as a result of the insured vehicle participating in an accident, and thereupon turns over the defense of the action to his insurance company, does not by such action impliedly authorize counsel, employed by the insurance company to defend the action, to make a compromise settlement without his consent which will prejudice his right to recover his own damages from the other party to the accident.

The judgment should be reversed as to Heinemann, and the cause remanded to resolve the issue of whether it actually was consulted with respect to the compromise settlement and participated therein to the extent of consenting thereto.

*By the Court.*—The judgment as to the plaintiff Manufacturers & Merchants Indemnity Company is affirmed; the judgment as to the plaintiff Heinemann Creameries, Inc., is reversed, and cause remanded for further proceedings not inconsistent with this opinion.

The following opinion was filed September 16, 1955:

CURRIE, J. (*on motion for rehearing*). Counsel for the defendants and counsel *amici curiae,* in their briefs filed in support of their motion for rehearing, express the view that our original opinion herein is a repudiation of the principle that evidence of offering to make a compromise settlement, or the making of such a settlement, is inadmissible as conduct constituting an admission of liability. We assure counsel that such is not the fact, and that such principle is not to be considered as impaired in any way by our decision herein.

The basis of our holding is that where A and B are parties to an accident, and B makes a compromise settlement of A's claim for his damages arising from such accident, B is estopped from later asserting a claim for his own damages arising from such accident against A, unless the right to later assert such claim was expressly reserved by B at the time of concluding the compromise settlement. We adhere to our original conclusion, that the recital appearing in the instant release to the effect that the settlement payment was not an admission of liability, did not constitute such express reservation. Such recital often appears in draft forms of releases used by automobile and public-liability insurance companies, and it is common knowledge that one of its purposes is to mollify the feelings of those insured who take the position that they have been guilty of no negligence. Another purpose of such a recital is to protect the settlor against

the contingency of some third party, who was injured or damaged in the same accident, attempting to ground a claim upon the settlement.

We deem that the invoking of such rule of estoppel tends to promote the interests of justice. Often the party who settles his claim for damages accepts a reduced amount in order to avoid litigation, which reduced amount he likely would be unwilling to accept, if he were apprised of the fact that the opposite party making the payment would later force him to litigate the issue of liability in a court action brought by such other party's seeking to recover the latter's own damages arising from the same accident. We consider the better rule to be that the making of the original settlement without any express reservation of rights by the settlor constitutes a complete accord and satisfaction of all claims of the *immediate* parties to the settlement arising out of the same accident.

*By the Court.*—The motion for rehearing is denied with $25 costs.

The following opinion was filed September 19, 1955:

GEHL, J. (*dissenting*). It appears rather clearly that the conclusion of the majority is based upon the erroneous assumption that all settlements are made because the amount paid is, in the view of the payor, relatively small. As trial lawyers and judges well know, that is not always the case. In many instances there are circumstances other than the opportunity to settle for what appears to be a small amount which induce a party to an automobile case to compromise a claim. For example, suppose that A with an excellent case should offer to pay B upon the latter's alleged claim a small sum as "nuisance money." B, satisfied that he has only a

claim of no more than "nuisance" value, and being fully aware that A so considers it, accepts the offer. A makes the payment so as to acquire the opening and closing at the trial. Should he be precluded from litigating his claim?

Another example.—A, his personal attorney, his insurance carrier and its attorney, B and his attorney and his insurance carrier and its attorney are all present at a pretrial conference and fully aware of what is taking place. It is likely that the trial will consume a number of days. Again B has a claim of only "nuisance" value. A's insurance carrier settles B's claim by payment of a small amount, thus leaving A to prosecute his own claim and relieving itself of the necessity of participating in a long trial. Should B's release operate as the majority suggest?

These are but a few examples which, it appears to me, demonstrate the fallacy of the reasoning of the majority and the unsatisfactory results which will follow from their determination.

But, the majority say, A could in the instances cited, maintain the right to assert his claim by express reservation. Suppose however that B, willing to accept A's offer of payment, should refuse to include in his release agreement a provision for reservation. I imagine that with all of the power which this court has, we could say "that would be too bad for A," but I wonder if, under the circumstances we should do so.

There is no good reason for presuming that when A accepts a settlement from B for A's claim against B arising out of an automobile collision, and when A gives a release to B for such claim, that B intended thereby to release A from any claim that B might have against A. If it is B's intention by such compromise settlement to relinquish his claim against A, such intention may well be incorporated in the settlement contract. The parties ought to be left free to settle upon such

terms as they themselves desire and an artificial device ought not to be set up in the law whereby they are precluded from doing so.

I am authorized to state the Mr. Justice STEINLE joins in this dissent.