800 P.2d 8

**Alicia SANDBAK, a minor, By and Through her guardian ad litem, J. Michael TULLY, Plaintiff/Appellant,**

**v.**

**Louis SANDBAK and Margaret–Mercy Sandbak, husband and wife, Defendants/Appellees.**

**No. 2 CA–CV 89–0265.**

Court of Appeals of Arizona, Division 2, Department B.

June 7, 1990.

Review Denied Nov. 14, 1990.

J. Michael Tully, P.C. by J. Michael Tully, Tucson, for plaintiff/appellant.

Slutes, Sakrison, Even, Grant & Pelander, P.C. by David E. Hill, Tucson, for defendants/appellees.

## OPINION

LACAGNINA, Judge.

Alicia Sandbak, a minor, through her guardian ad litem, J. Michael Tully, appeals from a summary judgment granted in favor of Louis Sandbak and Margaret-Mercy Sandbak, her parents, on a cross-claim filed by Alicia for injuries sustained by a pit bull dog in her neighbor's yard. She argues the following issues on appeal:

1. A claim based on negligent supervision of a minor is not barred by the doctrine of parental immunity.

2. The Sandbaks violated a duty to the world at large by allowing Alicia to trespass on the neighbor's property.

3. The "duty to the world at large" test has been misapplied in Arizona.

4. The doctrine of parental immunity should be abolished and replaced with a reasonableness test.

5. The doctrine of parental immunity violates article XVIII, § 6 of the Arizona Constitution.

We affirm.

## FACTS AND PROCEDURAL HISTORY

At the time of the incident at issue in this appeal, the Sandbaks lived next door to Ronald Craig Knott who rented property owned by Fred and Sharon Redden. Knott owned pit bull terriers and kept them on the property. On January 13, 1988, one of the pit bull terriers severely mauled Alicia, causing serious injuries. Knott testified in deposition that Alicia had trespassed on his property at least 50 times, that he had chased her from the property in view of Margaret Sandbak, that Redden had posted no trespassing signs on the entrances to the property, that Margaret Sandbak knew the pit pull terriers had a reputation for being vicious and that Alicia had wandered onto Knott's property the day before the attack.

In addition, the Sandbaks had a well-known reputation in the neighborhood for allowing their small children to wander off without supervision, sometimes a substantial distance from their home. Alicia's brother, also a toddler, had previously wandered onto a neighbor's property where he was attacked and injured by a dog.

The Sandbaks filed their initial complaint on their behalf and on behalf of their two children, naming Knott and the Reddens as defendants. The trial court appointed Alicia a guardian ad litem who filed a cross-claim against her parents, claiming they were liable for her injuries because of negligent supervision. Knott died without adequate insurance in his estate to cover the injuries and was therefore dismissed from the lawsuit. In addition, the Reddens successfully obtained summary judgment in their favor which was affirmed by this court on appeal. The Sandbaks filed a motion for summary judgment on the cross-claim arguing that the doctrine of parental immunity barred the claim by Alicia. The trial court granted their motion for summary judgment from which Alicia appeals.

## PARENTAL IMMUNITY

At common law a child had no right to sue his parents. *See Purcell v. Frazer,* 7 Ariz.App. 5, 7, 435 P.2d 736, 738 (1967). The doctrine of parental immunity existed in Arizona until the supreme court decided *Streenz v. Streenz,* 106 Ariz. 86, 471 P.2d 282 (1970). In *Streenz* the supreme court held that an unemancipated child was not barred from suing her parents for injuries sustained through the parents' negligent driving. Expressly exempt from the court's abrogation of parental immunity, however, were situations where the alleged negligent act (1) involved an exercise of parental authority, and (2) involved an exercise of ordinary parental discretion with respect to the provision of food, clothing, housing, medical and dental services and other care. 106 Ariz. at 89, 471 P.2d at 285.

The supreme court applied this test in *Sandoval v. Sandoval*, 128 Ariz. 11, 623 P.2d 800 (1981), a case involving a four-year-old boy who rode his tricycle from his front yard into the street in front of his home and was run over by an automobile driven by an uninsured motorist. The child through his guardian ad litem brought a negligence action against his parents and appealed from summary judgment granted in their favor based upon the doctrine of parental immunity. The court in *Sandoval* held that the duty to latch the gate was a duty "owed to the child alone and part of the parental 'care and control' or 'other care' to be provided by the parents." 128 Ariz. at 13, 623 P.2d at 802. In *Schleier v. Alter*, 159 Ariz. 397, 767 P.2d 1187 (App. 1989), Division One of this court held that when the owners of a dog with demonstrated vicious tendencies toward children expose the dog to their own child in their own home, they are not shielded by the parental immunity doctrine from common law liability for injuries that the dog inflicts. The court found that the parents violated both a duty to the child and a duty to the world at large and that the former duty was "subsumed within the latter and parental immunity cease[d] to apply." 159 Ariz. at 400, 767 P.2d at 1190. The court found that the defendants as dog owners owed a duty to the world at large to isolate the dog, a dangerous instrumentality, from all children including their own.

■ Alicia first argues that her claim against her parents for negligent supervision is not barred by parental immunity because that doctrine is limited to a parent's negligence with regard to legal obligations, citing *Thoreson v. Milwaukee & Suburban Transport Co.*, 56 Wis.2d 231, 201 N.W.2d 745, 753 (1972). We disagree. The Arizona courts have not limited the doctrine of parental immunity to those acts which a parent is legally obligated to perform. We have included the broad category of "other care" within the exception to the doctrine's application. *Sandoval, supra.*

■ Next, Alicia argues that her parents violated a duty to the world at large by allowing her to trespass on Knott's property. Assuming such a duty exists, violation of that duty was not the proximate cause of the injury. As the court stated in *Sandoval*, "the direct cause of Ramero's injuries was the impact of the Perez automobile, not the act of leaving the gate open." 128 Ariz. at 13, 623 P.2d at 802. In this case the direct cause of Alicia's injuries was the "impact" of the pit bull and not her parent's act in allowing her to trespass onto Knott's property. In addition, we agree with the Sandbaks that there must be some connection between the breach of a duty and the litigants. In this case, there is no connection between the alleged breach of a duty to the world at large to keep the child from trespassing and the subsequent action between Alicia and her parents.

Next, Alicia argues the "world at large" test has been misapplied in Arizona as the only basis for the *Streenz* exception to the doctrine of parental immunity and that the doctrine of parental immunity should be abolished and replaced with a "reasonable and prudent parent" test, citing *Gibson v. Gibson*, 3 Cal.3d 914, 92 Cal.Rptr. 288, 479 P.2d 648 (1971). The supreme court in *Sandoval* clearly stated: "We will continue to consider, on a case by case basis, the actual cause of the injury and whether the act of the parent breached a duty owed to the world at large, as opposed to a duty owed to a child within the family sphere." 128 Ariz. at 14, 623 P.2d at 803. The abolition of the doctrine is a matter which must be addressed to the supreme court.

■ Finally, Alicia argues the doctrine of parental immunity is unconstitutional because, as applied, it completely abrogates Alicia's right to pursue her negligence claim against her parents, citing article XVIII, § 6 of the Arizona Constitution. However, Alicia's right to sue her parents for damages must have existed at the time Arizona adopted its constitution. A.R.S. § 1-201. This right did not exist at common law. *Purcell v. Frazer, supra.* The doctrine of parental immunity was judicially created in 1891. *See Streenz*, 106 Ariz.

at 87, 471 P.2d at 283.  Therefore, Alicia's argument fails.

Affirmed.

LIVERMORE, P.J., and FERNANDEZ, C.J., concur.