26 F.3d 776
 THRESHERMEN'S MUTUAL INSURANCE COMPANY, Plaintiff-Appellant,
v.
WALLINGFORD MUTUAL INSURANCE COMPANY, Defendant-Appellee.
LIBERTY MUTUAL INSURANCE COMPANY, Defendant-Third/Party
Plaintiff-Appellee,
v.
John BRADY, Ginger L. Brady and Jeffrey Brady and Jamie
Brady, minors by their Guardian ad Litem, James J.
Murphy, Third/Party Defendants-Appellees.
 No. 93-2085.
 United States Court of Appeals,
Seventh Circuit.
 Argued Nov. 10, 1993.
Decided June 16, 1994.
 
 Frank Steeves (argued), Brian Peacy, Riordan, Crivello, Carlson, Mentkowski & Steeves, Milwaukee, WI, for Threshermen's Mut. Ins. Co.
 Thomas W. Bertz (argued), Nadine I. Davy, Anderson, Shannon, O'Brien, Rice & Bertz, Stevens Point, WI, for Liberty Mut. Ins. Co.
 Barbara J. Janaszek, James G. Allison, Whyte & Hirschboeck, Milwaukee, WI, Thomas W. Bertz, Nadine I. Davy, Anderson, Shannon, O'Brien, Rice & Bertz, Stevens Point, WI, for Wallingford Mut. Ins. Co., Ltd.
 Moses Josef Zimmermann, Gillick, Murphy, Wicht & Prachthauser, Milwaukee, WI, for John Brady, Ginger L. Brady, Jeffrey Brady, Jamie Brady, and James J. Murphy.
 Before GIBSON,* COFFEY and RIPPLE, Circuit Judges.
 RIPPLE, Circuit Judge.
 
 
 1
 This is an appeal from summary judgment determinations. Thresherman's Mutual Insurance Company ("Threshermen's") asserted claims of failure to indemnify or to make contribution against Liberty Mutual Insurance Company ("Liberty") and its excess carrier Wallingford Mutual Insurance Co., Ltd. ("Wallingford"). The district court held that Threshermen's contentions were barred by res judicata and by the statute of limitations. For the reasons that follow, we affirm the judgment of the district court.
 
 
 2
 * BACKGROUND
 
 A. State Court Action
 
 3
 On August 16, 1987, John Brady fractured his spine when a lawn chair in which he was sitting collapsed. In 1988, John Brady and his family ("the Bradys") brought a products liability action in the Circuit Court for Shawano County, Wisconsin ("the Shawano action"). The Bradys' Third Amended Complaint, filed April 18, 1989, raised negligence and strict liability claims against the manufacturer of the chair, Almet/Lawn Lite Co.; Almet's primary liability carrier, Liberty; the distributor from whom the chair was purchased, Louis Cerqua and Robert Morgenson d/b/a Buyer's Mart; their excess liability carrier, Threshermen's; and others.
 
 
 4
 In its answer to the complaint, Threshermen's and its insureds, Mr. Cerqua and Mr. Morgenson, cross-claimed for contribution and/or indemnification:
 
 
 5
 As a crossclaim against all co-defendants, these answering and crossclaiming defendants allege that if they or any of them are held liable to the plaintiffs, they will be entitled to contribution and/or indemnification according to law from all co-defendants.
 
 
 6
 R.35, Ex. 2B. Liberty's insured, Almet, filed an amended answer to the complaint on May 15, 1989, denying liability under this crossclaim and seeking its dismissal.
 
 
 7
 A review of the circumstances that occurred prior to Threshermen's filing of its answer and crossclaim in the Shawano action is helpful to an understanding of the issues before us now. More than three months before the Bradys filed their third amended complaint, Threshermen's attorney wrote Liberty's attorney and claimed that the broad form vendor's endorsement in Liberty's policy covered any liability Robert Morgenson and Lewis Cerqua might incur in a lawsuit by the Bradys.[1] In a letter dated January 4, 1989, he sought Liberty's interpretation of that vendor's endorsement:
 
 
 8
 As you know, the policy of insurance issued by Liberty Mutual Insurance Company to Allegheny International, Inc. includes an endorsement entitled "additional insured (vendors--broad form)". A review of this endorsement leads me to conclude that it applies to Robert Morgenson and Lewis Cerqua and that, therefore, they are additional insureds under the Liberty Mutual policy. I see no other way to interpret this policy.
 
 
 9
 Just to be sure that my interpretation of the policy is consistent with that of Liberty Mutual's, I would like to have Liberty Mutual's position on this coverage question. I would like to have the position in writing as soon as possible. I would prefer not to raise this issue in the pleadings but will do so if need be.
 
 
 10
 R.35, Ex. 3A. Liberty did not reply, despite continued inquiries by counsel for Threshermen's. On March 28, 1989, Threshermen's lawyer tendered the defense of Lewis Cerqua and Robert Morgenson, d/b/a Buyer's Mart, to Liberty. Still Liberty did not respond. On April 24, 1989, Threshermen's attorney asked for "an immediate response since, by our view, we are incurring substantial costs which should be borne by Liberty Mutual." R.35, Ex. 3D. His letter of May 17, 1989 added the statement that Liberty's policy is primary and that Liberty has a duty to defend Mr. Cerqua and Mr. Morgenson: "It goes without saying that Liberty Mutual Insurance Company has a duty of good faith to Lewis Cerqua and Robert Morgenson, and that duty extends to providing a defense and making a reasonable effort to settle the case on their behalf." R.35, Ex. 3E.
 
 
 11
 Despite Liberty's lack of reply, Threshermen's counsel was aware of ongoing settlement negotiations. On June 7, 1989, again by letter seeking a response from Liberty, he commented:
 
 
 12
 Also, please keep me advised as to settlement negotiations. It is my understanding that Liberty Mutual has still not committed their policy limits. I request that they do so. In addition, it is our position that any offer made by Liberty Mutual Insurance Company should include Mr. Cerqua and Mr. Morgenson.
 
 
 13
 R.35, Ex. 3F. Threshermen's lawyer wrote once more on June 12 to advise Liberty that, even though he knew Liberty had committed its policy limits, neither Liberty nor its excess carrier was relieved of its obligation to defend and to cover Messrs. Cerqua and Morgenson.
 
 
 14
 I am aware that Liberty Mutual Insurance Company has now committed its policy limits. It is my understanding that the representative of the excess carrier is now handling the negotiations.... I would expect Liberty Mutual Insurance Company to make it clear to the excess carrier that the money put into the settlement pot by Liberty Mutual Insurance Company is not only on behalf of Almet/Lawn Lite, but, because of the applicable policy provisions, is also committed on behalf of Lewis Cerqua and Robert Morgenson.
 
 
 15
 R.35, Ex. 3G.
 
 
 16
 Finally, on June 15 (by telephone) and June 16 (by telefax transmitted letter), a Liberty adjustor responded and rejected Threshermen's tender of defense. Liberty based its rejection on the fact that the lawn chair at issue had been sold as damaged goods, without warranty, and, according to the deposition testimony of Mr. Cerqua and Mr. Morgenson, had been repaired by them. Liberty took the position that repair was an independent act of negligence not covered by the policy.
 
 
 17
 The parties came to an agreement before trial. On July 13, 1989, the Bradys' counsel notified all defendants that settlement was possible. A Settlement Agreement and Release was executed on July 20, 1989 by the Bradys, Liberty and its insured Almet. Liberty committed its policy limit of $2 million to fund an annuity that would make periodic payments to the Bradys. Almet's excess carrier Wallingford, although not a party in the Shawano action, also contributed almost $2 million toward the settlement. On July 28, 1989, the Bradys executed a final settlement with Threshermen's and its insureds in the amount of $600,000. On August 4, 1989, the state circuit court approved the Stipulation and Order for Dismissal signed by all the parties and ordered a dismissal of the action with prejudice on the merits. The stipulation provided:
 
 
 18
 IT IS STIPULATED by all of the parties to this action, through their respective attorneys, that this action and all the causes of action, claims and cross-claims contained in the pleadings herein, may be dismissed with prejudice, on the merits without cost, and without further notice to any party.
 
 
 19
 R.35, Ex. 7 at 1-2.
 
 B. Federal Court Action
 
 20
 Threshermen's[2] then commenced this action against Liberty and Wallingford on July 26, 1990. It alleged that Liberty and Wallingford had breached their insurance contracts by denying the tender of defense and by failing to negotiate a settlement on behalf of Lewis Cerqua and Robert Morgenson in the Shawano action. Threshermen's also claimed that it was entitled to contribution and/or indemnification from Liberty and Wallingford for the settlement of the Bradys' claim and for its defense costs. Liberty cross-claimed against Wallingford for contribution and/or indemnification; it also filed a third-party complaint against the Bradys for damages on the ground that their settlement agreement with Liberty required that they defend Liberty in the present action. The parties filed cross-motions for summary judgment.
 
 
 21
 In its Decision and Order of April 2, 1993, the district court granted Liberty's motion for summary judgment. Relying on DePratt v. West Bend Mutual Insurance Co., 113 Wis.2d 306, 334 N.W.2d 883 (1983), the court held that the stipulated judgment of dismissal on the merits in the Shawano action, signed by all the parties, constituted a final judgment for res judicata purposes. The court further concluded that, because Threshermen's might have litigated its present claims against Liberty in the Shawano action, the claims were barred by res judicata.
 
 
 22
 The district court also held that Threshermen's contribution claim was barred by the statute of limitations, Wis.Stat. Sec. 893.92, which states that "an action for contribution based on tort ... shall be commenced within one year after the cause of action accrued or be barred." The court found that the cause of action accrued when Threshermen's paid the settlement amount by check to the Bradys, more than one year before Threshermen's brought this suit.[3]
 
 
 23
 Once the court dismissed Threshermen's claims against Liberty, Liberty's third-party complaint against the Bradys and its crossclaim against Wallingford became moot. The Bradys' summary judgment motion was held to be moot as well. The court also dismissed Threshermen's claims against Wallingford for failure to state a claim.[4] Threshermen's has timely appealed.
 
 II
 DISCUSSION
 
 24
 We review the district court's grant or denial of summary judgment de novo. Fort Wayne Community Sch. v. Fort Wayne Educ. Ass'n, 977 F.2d 358, 361 (7th Cir.1992), cert denied, --- U.S. ----, 114 S.Ct. 90, 126 L.Ed.2d 57 (1993). The burden of proving that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law is on the party moving for summary judgment. Fed.R.Civ.P. 56(c); see also Adickes v. S.H. Kress & Co., 398 U.S. 144, 159-60, 90 S.Ct. 1598, 1609-10, 26 L.Ed.2d 142 (1970). In this case the underlying facts are not in dispute.
 
 
 25
 A federal court hearing a case brought under diversity jurisdiction must apply the substantive law of the forum in which it sits. Erie R.R. Co. v. Tompkins, 304 U.S. 64, 78, 58 S.Ct. 817, 822, 82 L.Ed. 1188 (1938); Moser v. Universal Eng'g Corp., 11 F.3d 720, 724 n. 6 (7th Cir.1993). " 'State law barring an action because of a statute of limitations is sufficiently "substantive," in the Erie sense, that a federal court in that state exercising diversity jurisdiction must respect it.' " Id. (citing Kalmich v. Bruno, 553 F.2d 549, 552 (7th Cir.), cert. denied, 434 U.S. 940, 98 S.Ct. 432, 54 L.Ed.2d 300 (1977) (citing in turn Guaranty Trust Co. v. York, 326 U.S. 99, 110, 65 S.Ct. 1464, 1470, 89 L.Ed. 2079 (1945))); see also Rockford Mut. Ins. Co. v. Amerisure Ins. Co., 925 F.2d 193, 195 (7th Cir.1991) (applying state law to res judicata issue); Utz, 619 F.2d at 9 (treating Wisconsin direct action statute as substantive within the meaning of Erie ). The law of Wisconsin is both the law of the forum and the law expressly governing the settlement agreements executed by the parties in the Shawano action. Thus Wisconsin law is applicable in this case. See Transamerica Ins. Co. v. South, 975 F.2d 321, 327 (7th Cir.1992) (stating that, absent party challenge to choice of law in diversity cases, governing law is that of forum state).
 
 A. Statute of Limitations
 
 26
 The district court held that Wisconsin's statute Sec. 893.92, the statute of limitations for contribution, barred any claim made by Threshermen's for contribution. On appeal Threshermen's has not challenged this decision. Because Threshermen's failure to raise the issue constitutes waiver, we need not address the district court's ruling concerning the contribution claim. Rivera v. Benefit Trust Life Ins. Co., 921 F.2d 692, 697 (7th Cir.1991). Nevertheless, we note in passing that the statutory bar was proper.[5] Section 893.92 clearly establishes a one-year limitation period on claims for contribution arising from payment. When payment is made, contribution claims should be commenced within one year. Milwaukee Mut. Ins. Co. v. Priewe, 118 Wis.2d 318, 348 N.W.2d 585, 587 (Ct.App.1984). This one-year statute applies if the payment made was a final settlement rather than an advance or partial payment. Id. Such is the case here: On June 27, 1989, Threshermen's issued its $600,000 check, payable to the Brady plaintiffs; it commenced its action for contribution and/or indemnity more than one year later, on July 26, 1990. The statute of limitations clearly bars the contribution portion of the action.
 
 B. Res Judicata
 
 27
 On appeal, Threshermen's hope lies in its claim for indemnification.[6] In its evaluation of this claim, the district court focused, as required by the Full Faith and Credit Act, 28 U.S.C. Sec. 1738, on the preclusive effect of the Wisconsin court judgment:
 
 
 28
 The records and judicial proceedings of any court of any such State, Territory or Possession ... shall have the same full faith and credit in every court within the United States and its Territories and Possessions as they have by law or usage in the courts of such State, Territory or Possession from which they are taken.
 
 
 29
 R.99 at 5-6. The district court followed the law of res judicata enunciated by the Wisconsin Supreme Court: "[A] final judgment is conclusive in all subsequent actions between the same parties as to all matters which were litigated or which might have been litigated in the former proceedings." Id. at 6 (quoting DePratt v. West Bend Mut. Ins. Co., 113 Wis.2d 306, 334 N.W.2d 883, 885 (1983)). The district court also recognized that, under Wisconsin law, a stipulation for dismissal on the merits constitutes a final judgment for res judicata purposes. Id. (citing Great Lakes Trucking Co., Inc. v. Black, 165 Wis.2d 162, 477 N.W.2d 65, 67 (Ct.App.1991)). The court accordingly concluded that, for purposes of res judicata, the stipulated judgment in the Shawano action was a final judgment. Id. Furthermore, after reviewing the evidence that Threshermen's was aware of its claim against Liberty, the district court concluded that Threshermen's could have litigated that claim in the Shawano action. Accordingly, the district court held that the claim was barred by res judicata. Id. at 7.[7]
 
 
 30
 The analytical methodology of the district court was correct. "[U]nder the Full Faith and Credit Act a federal court must give the same preclusive effect to a state-court judgment as another court of that State would give." Parsons Steel, Inc. v. First Alabama Bank, 474 U.S. 518, 523, 106 S.Ct. 768, 771, 88 L.Ed.2d 877 (1986); see also Marrese v. American Academy of Orthopaedic Surgeons, 470 U.S. 373, 380-81, 105 S.Ct. 1327, 1331-32, 84 L.Ed.2d 274 (1985); Migra v. Warren City Sch. Dist. Bd. of Educ., 465 U.S. 75, 81, 104 S.Ct. 892, 896, 79 L.Ed.2d 56 (1984). In particular, federal courts give full faith and credit to the state court's res judicata principles.It has long been established that Sec. 1738 does not allow federal courts to employ their own rules of res judicata in determining the effect of state judgments. Rather, it goes beyond the common law and commands a federal court to accept the rules chosen by the State from which the judgment is taken.
 
 
 31
 Kremer v. Chemical Constr. Corp., 456 U.S. 461, 481-82, 102 S.Ct. 1883, 1897-98, 72 L.Ed.2d 262 (1982). The Wisconsin Supreme Court set forth its res judicata principles in DePratt: An earlier action can bar a later one if there is "an identity of the parties and an identity of the causes of actions or claims in the two cases." DePratt, 334 N.W.2d at 885. The state supreme court therefore has adopted the "transactional view of claim or cause of action" of the Restatement (Second) of Judgments, Sec. 24 cmt. a:
 
 
 32
 The present trend is to see a claim in factual terms and to make it coterminous with the transaction regardless of the number of substantive theories, or variant forms of relief flowing from those theories, that may be available to the plaintiff; regardless of the number of primary rights that may have been invaded; and regardless of the variations in the evidence needed to support the theories or rights. The transaction is the basis of the litigative unit or entity which may not be split.
 
 
 33
 Id. at 886.
 
 
 34
 Threshermen's does not challenge the identity of parties.[8] Instead it asserts that the causes of action in the state and federal suits are distinct: Its state court claim arose out of common law contribution and indemnification related to John Brady's accident, but its present federal action is based on a breach of contract concerning the vendor's endorsement, a breach which occurred long after Mr. Brady's injury.
 
 
 35
 The Wisconsin rule of law to be followed is that res judicata bars litigation of all claims that were or might have been litigated. DePratt, 334 N.W.2d at 885. In this case the alleged breach of the vendor's endorsement occurred during the pendency of the Shawano action and, as the record makes clear, Threshermen's contentions could have been raised in that case.[9] Nevertheless, it decided to settle with the Bradys and to dismiss its claims against Liberty by entering into the Stipulation and Order for Dismissal. Threshermen's cannot now avoid res judicata by splitting its cause of action for indemnification into two claims. See Post v. Schwall, 157 Wis.2d 652, 460 N.W.2d 794, 797 (Ct.App.1990) (finding that foreclosure claim and breach of contract claim arose from the same land contract transaction which was the subject of the prior action; therefore the second claim was barred by res judicata). All of Threshermen's claims were derived from the settlement negotiations and court-approved agreement following John Brady's accident.[10] Clearly Threshermen's could have litigated its grievances in the first proceeding. See A.B.C.G. Enters., Inc. v. First Bank Southeast, N.A., 178 Wis.2d 370, 504 N.W.2d 382, 385 (Ct.App.1993) (rejecting plaintiff's separate claims, finding an identity of cause of action under transactional analysis). Failure to plead a known claim arising out of the same factual situation will bar later litigation of the issue. Great Lakes Trucking Co. v. Black, 165 Wis.2d 162, 477 N.W.2d 65, 68 (Ct.App.1991) ("For purposes of res judicata a basic factual situation gives rise to one cause of action, no matter how many different theories of relief may apply."). Based on the record before us, we conclude that the complaint was properly dismissed on res judicata grounds. Id.; see also Parks v. City of Madison, 171 Wis.2d 730, 492 N.W.2d 365, 368 (Ct.App.1992) (explaining conclusiveness of earlier judgment as to matters that might have been litigated).[11]
 
 
 36
 Threshermen's asserts, as its final argument, that fundamental fairness should prevent application of res judicata because that doctrine should never be applied in such a fashion as to deprive a party of the opportunity to have a full and fair determination of an issue. Threshermen's, however, was fully aware that it might have raised its contribution and indemnity claims in state court. Now fairness lies with the other parties: "Fairness to the defendant and sound judicial administration require that at some point litigation over the particular controversy must come to an end." DePratt, 334 N.W.2d at 885 (citing Restatement (Second) of Judgments Sec. 19 cmt. a (1982)). Threshermen's had its fair opportunity to litigate. We therefore affirm the district court's grant of summary judgment against Threshermen's.
 
 Conclusion
 
 37
 For these reasons, the judgment of the district court is affirmed.
 
 
 38
 AFFIRMED.
 
 
 
 *
 The Honorable Floyd R. Gibson of the United States Court of Appeals for the Eighth Circuit is sitting by designation
 
 
 [1]
 The broad form vendors endorsement found in the Almet insurance policy issued by Liberty states, in pertinent part:
 ADDITIONAL INSURED
 (Vendors-Broad Form)
 It is agreed that the "Persons Insured" provision is amended to include any person or organization (herein referred to as "vendor"), as an insured, but only with respect to the distribution or sale in the regular course of the vendor's business of the named Insured's products subject to the following additional provisions:
 I. The Insurance with respect to the vendor does not apply to:
 (a) any express warranty unauthorized by the named insured;
 (b) bodily injury or property damage arising out of:
 (ii) repacking, unless unpacked solely for the purpose of inspection, demonstration, testing or the substitution of parts under instruction from the manufacturer and then repacked in the original container,
 (iii) demonstration, installation, servicing or repair operations, except such operations performed at the vendor's premises in connection with the sale of the product.
 
 
 [2]
 In this action Lewis Cerqua and Robert Morgenson have assigned their claims against Almet's excess insurers to Threshermen's
 
 
 [3]
 The court found that the contribution claim accrued on June 27, 1989, the date that Threshermen's issued a settlement check to the Bradys. On July 26, 1990, more than one year later, Threshermen's commenced this action
 
 
 [4]
 Wallingford was not a party to the Shawano action, but was named as a defendant in the federal cause of action. The district court dismissed the claim against it for failure to state a claim. The court held that Threshermen's failed to show that Cerqua and Morgenson were "insureds" under the Wallingford policy, and failed to file a claim with Wallingford within twelve months of payment of a claim, as required under its policy
 In this appeal, Wallingford filed a "Statement of Intent Not to File Brief," explaining that Threshermen's did not raise any issue or advance any argument challenging the dismissal of its claims as against Wallingford. After reviewing the record and briefs before this court, we agree that no claim has been presented against Wallingford. Although it is a named defendant-appellee, Wallingford is not mentioned in Threshermen's briefs. As a consequence, we affirm the district court's dismissal of the claims against Wallingford.
 
 
 [5]
 Cf. Martin v. Consultants & Adm'rs, Inc., 966 F.2d 1078, 1092-93 (7th Cir.1992) (defendants waived issue of statute of limitations by not challenging district court's application of statute; appellate court nevertheless found limitation was appropriate)
 
 
 [6]
 The Wisconsin Supreme Court has explained the difference between contribution and indemnity:
 Contribution distributes the loss by requiring each person to pay his proportionate share of damages on a comparative fault basis. Indemnification shifts the entire loss from one person who has been compelled to pay it to another who on the basis of equitable principles should bear the loss.
 Swanigan v. State Farm Ins. Co., 99 Wis.2d 179, 299 N.W.2d 234, 242 (1980).
 
 
 [7]
 Although the district court held that Threshermen's claim for contribution was barred by the statute of limitations, it is clear that its res judicata analysis applies to that claim as well
 
 
 [8]
 Although Wallingford was not a party to the Shawano litigation, Threshermen's has not challenged the "identity of parties" prong of the transactional analysis on appeal, as it did before the district court. As we stated in note 4, supra, Threshermen's failure to raise any charge against Wallingford on appeal must result in our affirmance of the district court's dismissal of the claims against Wallingford
 
 
 [9]
 As noted earlier in the text, in its January 4, 1989 letter Threshermen's originally threatened to plead Liberty's duty to accept the defense of Mr. Cerqua and Mr. Morgenson. It continued to remind Liberty of its responsibility to the two owners of Buyer's Mart under the provisions of its policy. The two June 1989 letters from Threshermen's lawyer reflect Threshermen's clear awareness of Liberty's settlement negotiations with the Bradys and of the excess carrier's later handling of those negotiations
 
 
 [10]
 Wisconsin's direct action statute, Wis.Stats. Sec. 803.04(2), allowed the injured parties, the Bradys, to join both the insurance companies and the insureds as proper party defendants in the state Shawano action. See Decade's Monthly Income & Appreciation Fund by Keierleber v. Whyte & Hirschboeck, S.C., 173 Wis.2d 665, 495 N.W.2d 335, 341 (Wis.1993) (holding that direct action may be maintained against insurance providers whether policy is for indemnity or liability insurance); United States v. Ettrick Wood Prod., 916 F.2d 1211, 1214 (7th Cir.1990) (reviewing suit against bank and its insurance company under that statute); Utz v. Nationwide Mut. Ins. Co., 619 F.2d 7, 9 (7th Cir.1980) (describing Wisconsin's direct action statute)
 
 
 [11]
 The two cases on which Threshermen's relies do not further its position. Threshermen's points out that, in Warrington U.S.A. Inc. v. Allen, 631 F.Supp. 1456 (E.D.Wis.1986), the district court refused to bar a later related claim that arose after the original action was settled by stipulated dismissal. The facts of that case reveal that the dismissal included the defendants' promissory note agreeing to pay a sum within a year. The second claim arose a year later, after the defendant defaulted on the note. Clearly the second claim was separate and distinct, and could not have been litigated in the first action; therefore it was properly not barred by res judicata. Warrington is of no help to Threshermen's. The second case Threshermen's cites for support is Geis v. Nissan Corp., 57 Wis.2d 371, 204 N.W.2d 519 (1973). This case, issued eleven years before DePratt, is inapposite; it was decided before the transactional approach to res judicata was adopted by the Wisconsin Supreme Court